UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD J. HELLER,

                               Plaintiff,                    3:05-CV-1581

              v.

CONSOLIDATED RAIL CORPORATION,
UNITED TRANSPORTATION UNION,
CSX TRANSPORTATION, U.S. EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION,
and NORTHFOLK SOUTHERN CORPORATION.

                              Defendants.
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

### I. INTRODUCTION

Richard J. Heller ("Plaintiff") commenced this action *pro se* against five defendants[1] seeking damages for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213. Plaintiff also claims retaliation pursuant to §704(a) of Title VII, § 4(d) of the ADEA, and §§ 503(a) and (b) of the ADA. Defendant United Transportation

---

[1] The Equal Employment Opportunity Commission ("EEOC") has already been dismissed from the case.

1

Union ("UTU") moves to dismiss the claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging that, *inter alia*, the claims are barred by the applicable statute of limitations. For the reasons that follow, the motion is GRANTED and Plaintiff's claims against the UTU are DISMISSED.

## II. STANDARD OF REVIEW

The pending motion tests the legal sufficiency of the claims pleaded in the complaint. As the Supreme Court has held, "a complaint must only include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)). "This simplified notice pleading relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. Thus, a complaint is sufficient if it gives the defendant fair notice of the plaintiff's claims, the grounds upon which they rest, and states claims upon which relief could be granted. Id. at 514.

On a Rule 12(b)(6) motion, the Court accepts as true all factual allegations in the complaint. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). "Further, the court should construe the complaint liberally and draw inferences from the plaintiff's allegations in the light most favorable to the plaintiff." Tomayo v. City of N.Y., 2004 WL 137198, at * 5 (S.D.N.Y. Jan. 27, 2004)(citing Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999)). Still further, where the complaint is by a *pro se* litigant, in addition to construing the complaint liberally, the Court must also apply a more flexible standard in evaluating its sufficiency. Taylor v. Dep't of Educ., 313 F3d 768, 776 (2d Cir. 2002). However,

2

> "sweeping legal conclusions cast in the form of factual allegations" do not suffice to state a claim even at the Rule 12(b)(6) stage. 5A Charles Alan Wright *et al.,* FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp., 309 F.3d 71, 74 (2d Cir. 2002). Thus, the complaint must allege sufficient facts that would make the pleaded legal theories legally plausible. See Twombly v. Bell Atlantic Corp., 425 F.3d 99, 111 (2d Cir. 2005).

In deciding a Rule 12(b)(6) motion, review "is generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004)(citations omitted). In addition, the Court may look to public records, including records of actions filed in other courts. Id. (citations omitted). Dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Phillip v. Univ. of Rochester, 316 F.3d 291, 293 (2d Cir. 2003)(citation omitted), or where the complaint fails as a matter of law. Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002).

### III. BACKGROUND

To say the least, the allegations in the Complaint are confusing, rambling, and disjointed. Having thoroughly reviewed the Complaint and the voluminous attachments to the Complaint, the following facts appear to be those underlying the claims against the UTU.

3

On July 19, 1976, while employed by Consolidated Rail Corporation ("Conrail") as a conductor, Plaintiff suffered a work related injury. Compl.¶ 2; Compl. Ex. 1, p. 9. [2] Thereafter, Plaintiff sought compensation for his injury by bringing a suit under the Federal Employers Liability Act, 45 U.S.C. § 51 *et seq.* (FELA). See Heller v. Conrail, Civ. Case No. 76-3595 (E.D.Pa.), aff'd, 594 F.2d 854 (3d Cir. 1978). Plaintiff contends that the employer paid its doctors and witnesses to lie while under oath resulting in a verdict against him. Compl. Ex. 1, p. 9. He further contends that the day after the verdict, the employer and "a U.T.U. lawyer offered [him] [an] $80,000.00 settlement if [he] would quit [his] job." Id. He declined. Id. Plaintiff asserts that "[i]n 1980 [he] was released for duty (work) but Respondent illegally withheld me from working through discrimination, retaliation, conspiracy, criminal crimes and assault and battery." Id. [3]

In addition, Plaintiff applied for and received Social Security Disability benefits for twenty years from 1976 to 1996. Compl. Ex. 7, p.10. In 1996, he was deemed no longer eligible to receive those benefits. Id. Further, Plaintiff has applied for and been denied a Railroad Retirement annuity purportedly because as he is lacking the requisite number of months of employment.[4] Id. at 13; see also Compl. Ex. 1, p. 9. Subsequently, Plaintiff attempted to return to railroad employment. See Compl. Ex. 3; Compl. Ex. 8. However,

---

[2] Compl. Ex. 1, p. 9 is a copy of Plaintiff's EEOC complaint against the UTU. It should be noted that the EEOC complaints against Conrail, CSX Transportation, and Norfolk Southern (which are also attached as part of Exhibit 1), contain identical language as appears in the EEOC complaint against the UTU.

[3] Because Plaintiff has filed identical EEOC complaints against the defendants, it is unclear which "respondent" he refers to when he asserts that "Respondent illegally withheld me from working through discrimination, retaliation, conspiracy, criminal crimes and assault and battery." On the instant motion, the Court will presume that he is referring to the UTU.

[4] Plaintiff filed a petition for review of this denial with the U.S. Court of Appeals for the Second Circuit. Compl. p. 22. On April 21, 2003 the Second Circuit Court of Appeals denied his petition. Compl. Ex. 6.

4

disputes regarding his medical condition appear to have precluded his return to such employment. Id.

Plaintiff primarily alleges that he was discriminated against by all defendants from July 19, 1976 to the present time based on his contention that he "has been illegally with held [*sic*] from his job." Compl. p. 8, ¶ 2. He additionally alleges that all defendants "formed a malicious conspiracy, obstruction of justice, have committed criminal crimes and etc." in order to "hoodwink" him out of his job and denied him "his legal right to work under a reasonable accommodation and/or a different type of work/position."  Id.  In this regard, he contends that he has a "legal right to work/perform only one (1) days [*sic*] service in a month" and thereby become eligible for railroad retirement/ disability benefits and etc." Id. He claims that Defendant UTU failed to "protect/represent" him and joined with the other alleged "conspirators" to deprive him of his

> job, lost wages, UTU membership + benefits, railroad retirement benefits with creditable months of railroad service, active duty, sick leave, disability, [ seniority retroactive from July 19, 1976, and a railroad settlement for my on-the-job injury for July 19, 1976.

Id. p. 10, ¶ 3.

Although replete with broad conclusory allegations, the Complaint itself does not contain specific factual allegations regarding Defendant UTU's actions or omissions. Attached exhibits, however, do contain some specific facts regarding Defendant UTU which, the Court presumes, form the basis of his claims against this defendant.  In his June 4, 2003 complaint to the Equal Employment Opportunity Commission ("EEOC") against the UTU,  Plaintiff asserts that in April of 2002, he "supplied [his] medical release to

5

Respondent's Dr. Pribble." Compl, Ex. 1, p. 9.[5]  He then contends that in March of 2002, "[t]he UTU stripped me of my seniority rights and membership" thereby violating his rights under the ADA.  See Compl. Ex. 1, p. 9.   Plaintiff alleges in another exhibit that on March 20, 2002, he had a "phone conversation" with James Clark, UTU President and General Chairman, and with C. Wehr, UTU Local Chairman, requesting information in order to facilitate his return to work.  Compl. Ex. 8, p. 22.  He alleges that these officials "grew infuriated and abusive" and informed him that he had been stripped of his seniority rights and his UTU membership. Id.

>Although Plaintiff further alleges in the Complaint that:

> Employment Discrimination, Disability and Retaliation has occurred and continuing from 7/19/1976 with the (Latest) from 2001 to September 8, 2005 and October 28, 2005,

Compl., p. 13, he asserts no factual basis supporting actions occurring after March of 2002.  In addition, it appears that Plaintiff has not filed an EEOC charge related to these "latest" allegations.

## III. DISCUSSION

### a. Employment Discrimination Claims

To prosecute a discrimination claim under Title VII, the ADA or the ADEA in New York State, a plaintiff must file a complaint with the EEOC within 300 days of the alleged discriminatory event. 42 U.S.C. § 2000e-5(e) (Title VII); 42 U.S.C. § 12117(ADA); Flaherty v. Metromail Corp., 235 F.3d 133, 136 (2d Cir. 2000);  Benjamin v. Brookhaven Sci. Assocs., LLC, 387 F. Supp. 2d 146, 153 (E.D.N.Y. 2005).  "[E]ach incident of

---

[5]Because the EEOC complaints are all the same, it is unclear which "respondent" "Dr. Pribble" worked for, but, for purposes of this motion, the Court will assume that it was the UTU.

discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Amtrak v. Morgan, 536 U.S. 101, 114 (2002).

In the instant case, the most recent factual allegations involving the UTU are the claim regarding the "stripping" of his union membership rights during the March 20, 2002 telephone conversation with James Clark, UTU President and General Chairman, and with C. Wehr, UTU Local Chairman. Accepting as true these allegations, the 300-day clock started running on March 20, 2002. Therefore, in order to be timely, Plaintiff must have filed his EEOC complaint by January 16, 2003. Since he did not file his EEOC complaint against the UTU until June 4, 2003, his employment discrimination claims against this defendant are time barred.

### b.  Breach of the Duty of Fair Representation

Plaintiff's Complaint could be read as asserting a breach of the duty of fair representation claim against the UTU. See Vaca v. Sipes, 386 U.S. 171, 177 (1967)(The duty of fair representation imposes on a union an obligation "to serve the interest of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."); Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995)(Where a plaintiff proceeds *pro se,* a court must construe the complaint liberally and "'interpret [it] to raise the strongest arguments that [it] suggest[s].'")(quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, any such claim, if it is asserted, is time barred.

> A claim for a breach of the duty of fair representation must be commenced within six months from when plaintiff knew or reasonably should have known that the duty was breached. See, DelCostello v. International Broth. of

7

> Teamsters, 462 U.S. 151, 170-172, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)(holding that the six-month limitations period set forth in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applied to "hybrid" cases in which employees sue both their employer for breach of the CBA pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), and their union for breach of its duty of fair representation in mishandling the related grievance and arbitration proceedings); Eatz v. DME Unit of Local Union Number 3 of the Intern. Broth. of Elec. Workers, AFL-CIO, 794 F.2d 29, 33 (2d Cir.1986)(holding that the § 10(b) six-month limitations period also applied to unfair representation claims standing alone); see also Flanigan v. (International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America) Truck Drivers Local No. 671, 942 F.2d 824, 827 (2d Cir.1991)(holding that a cause of action for breach of a duty of fair representation accrues when the plaintiff could have first successfully maintained a suit based on that cause of action). Moreover, "[o]nce a plaintiff learns of [the] union's breach of its duty of fair representation, the union's subsequent failure to actually represent the plaintiff[ ] cannot be treated as a continuing violation that precludes the running of the limitations period." Buttry v. General Signal Corp., 68 F.3d 1488, 1492 (2d Cir. 1995)(internal quotations and citation omitted).

Angrisani v. Long Island R.R. & United Transp. Union Local, 2005 WL 1311798, at * 7 (E.D.N.Y. June 1, 2005).

Here, by the allegations in the Complaint, the asserted failure by the UTU to represent Plaintiff fairly arises out of its handling of matters following Plaintiff's unsuccessful FELA action in 1976. Plaintiff certainly knew, or should have known, that he was not put back to work following the FELA trial and, by his own allegations, collected Social Security Disability benefits from 1976 to 1996. He also asserts that when he attempted to return to work in 1996, his efforts were unsuccessful. Plaintiff knew, or should have know, by 1996 that is union was not advocating for his return to work and, thus, knew or should have know at that time that he had the makings of a breach of a duty of fair representation claim. Yet, Plaintiff did not file his action in this Court until December

8

20, 2005.  Accordingly, any claim asserting the breach of the duty of fair representation against the UTU arising out of the events following Plaintiff's failed FELA action and his unsuccessful attempt to return to work thereafter is time barred.  See  Buttry, 68 F.3d at 1492 ("Once a plaintiff learns of [the] union's breach of its duty of fair representation, the union's subsequent failure to actually represent the plaintiff[ ] cannot be treated as a continuing violation that precludes the running of the limitations period.").

Further, to the extent that Plaintiff contends that the UTU breached its duty of fair representation in 2002 when it allegedly stripped him of his seniority rights, the claim is also time barred.  As Plaintiff alleges, during a telephone conversation with UTU officials on March 20, 2002, he was advised that the UTU had stripped him of his seniority rights.  If a breach of the duty of fair representation occurred by this action, Plaintiff had reason to know of it at the time of the telephone conversation.  Indeed, he makes the same allegation in his EEOC complaint filed on June 4, 2003.  Thus, there is no dispute that Plaintiff knew by June 3, 2003 of an asserted breach of the duty of fair representation caused by the UTU's decision to strip him of his seniority rights, yet he failed to file an action until approximately two years and six months later.

Accordingly, the Court finds that any claim sounding in the breach of the duty of fair representation asserted in this action is barred because it is brought beyond the applicable statute of limitations period.

## IV. CONCLUSION

For the foregoing reasons, **DEFENDANT UTU's** motion [dkt. # 11] pursuant to Fed. R. Civ. P. 12 (b)(6) is **GRANTED** and **PLAINTIFF's** claims against the UTU are

9

**DISMISSED** as time barred.

**IT IS SO ORDERED**.

Dated:February 20,2007

_____
Thomas J. McAvoy
Senior, U.S. District Judge